IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L CAZET, et al., | |
| Plaintiffs, | No. C 10-02460 JSW |
| v. | |
| TOPPA EPPS, et al., | **ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| Defendants. | |

Now before the Court is the *ex parte* application for a temporary restraining order ("TRO") filed by Plaintiffs Robert L. Cazet, Alumni Athletics USA, LLC and Alumni Athletics, USA Inc. ("Plaintiffs"). The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for June 11, 2010 at 2:00 p.m. is HEREBY VACATED. Having carefully reviewed the parties' papers and considering their arguments and the relevant authority, and good cause appearing, the Court hereby DENIES Plaintiffs' TRO.

In order to obtain a temporary restraining order, as with a preliminary injunction, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365, 374 (2008) (citations omitted). The *Winter* court also noted that because injunctive relief is "an extraordinary remedy" it "may only be awarded upon a clear

1  showing that the plaintiff is entitled to such relief." *Id.* at 375-76 (citing *Mazurek v. Armstrong*,
2  520 U.S. 968, 972 (1997) (*per curiam*)). Thus "[i]n each case, courts 'must balance the
3  competing claims of injury and must consider the effect on each party of the granting or
4  withholding of the requested relief.' *Id.* at 376 (citing *Amoco Production Co. v. Gambell*, 480
5  U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay
6  particular regard for the public consequences in employing the extraordinary remedy of
7  injunction.'" *Id.* at 376-77 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).
8  Plaintiffs bring claims against Defendants Toppa Epps, Cameron Ripley, and Edward
9  Hayman ("Defendants") under the Lanham Act, 15 U.S.C. § 1125, for false and misleading
10 advertising and cyberpiracy and claims under California law for trade name infringement, false
11 and misleading advertising, and unfair competition.[1] Based on Defendants' alleged wrongful
12 use of Plaintiffs' mark "Alumni Athletics USA," Plaintiffs seek to enjoin Defendants from
13 using the name Alumni Athletics USA or any confusingly similar names as either a trade name
14 or as a domain name, including but not limited to "Alumni Athletics," "Alumni Athletics
15 Association," "Alumni Football" and "Alumni Football USA" in whole or part and from using
16 any videos and pictures on their website and/or promotional materials, which depict games
17 which were organized or sponsored by any of the Plaintiffs or having hyperlinks to any such
18 videos or pictures. However, to prevent Defendants from using this mark, Plaintiffs must first
19 demonstrate that they hold a protectable mark. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778
20 F.2d 1352, 1353-54 (9th Cir.1985); *see also Lahoti v. Vericheck, Inc.*, – F.Supp.2d. –, 2010 WL
21 1473976, 12 (W.D. Wash. April 9, 2010) ("To prevail on its claims of false designation of
22 origin, common law trademark infringement, and unfair competition (collectively,
23 "infringement claims"), [Plaintiff] must show that it holds a protectable mark...."); *CG Roxane*
24 *LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1034 (N.D. Cal. 2008) ("State and federal
25 trademark infringement, unfair competition and dilution claims follow essentially the same test.
26 ... Simply put, plaintiff must prove that it has a valid mark....).

---

[1] Plaintiffs also bring a claim for misappropriation of trade secrets in their complaint, but do not address this claim in their TRO application.

2

Based on the evidence currently before it, the Court cannot find, at this procedural stage, that Plaintiffs have obtained a protectable mark.[2] To be protected, a mark must be capable of distinguishing one's goods from the goods of others; in other words, the mark must be distinctive. *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). Marks are classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Id.* Descriptive marks define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood. *See id.* at 1047 n.8. Personal names are descriptive marks, entitled to protection so long as it acquires a recognized secondary meaning. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992); *E. & J. Gallo Winery v. Consorzio del Gallo Nero,* 782 F. Supp. 457, 462 (N.D. Cal. 1991). Descriptive marks are not inherently distinctive and so do not initially satisfy the distinctiveness element. However, descriptive marks can acquire distinctiveness if the public comes to associate the mark with a specific source. *Kendall-Jackson*, 150 F.3d at 1048. Acquired distinctiveness is referred to as secondary meaning which has been defined as "*association*, nothing more." *Blue Bell, Inc.*, 778 F.2d at 1354. The basic element of secondary meaning is the "mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Id.* (citations omitted).

Factors considered in determining whether a secondary meaning has been achieved include: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive. *Blue Bell*, 778 F.2d at 1358. Although Plaintiffs do not attempt characterize their alleged mark, the Court finds that the term "Alumni Athletics" is

---

[2] When faced with a motion for a preliminary injunction, the Court "is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved." *Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1423 (9th Cir. 1984). The standards for a temporary restraining order and for a preliminary injunction are substantially the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir.2001). Accordingly, the facts recited herein are not to be considered final and binding on the rest of the proceedings.

3

1  descriptive. Plaintiffs have not provided sufficient evidence to demonstrate that actual
2  purchasers of their product associate the mark with them. Nor have Plaintiffs demonstrated
3  sufficient advertising efforts to establish secondary meaning. In examining whether a plaintiff's
4  advertising efforts are sufficient, the Court must "look at the advertising's amount, nature and
5  geographical scope with an eye towards how likely the advertising is to expose a large number
6  of the relevant consuming public to the use of the symbol as a trademark or trade name." *Japan
7  Telecom v. Japan Telecom America*, 287 F.3d 866, 875 (9th Cir. 2002). "A large expenditure of
8  money does not in itself create legally protectable rights. The test of secondary meaning is the
9  effectiveness of the effort to create it." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378,
10 1383 (9th Cir. 1987). Other than the website that Defendants created and a single yellow pages
11 advertisement dated after Defendants claim they had equal use to use the name "Alumni
12 Athletics," Plaintiffs have not submitted evidence to show what advertising efforts they
13 engaged in to establish secondary meaning, particularly before Defendants started to use the
14 name. Finally, although there is evidence to demonstrate that Plaintiff Cazet has been using
15 names such as Alumni Football, Alumni Althetic Association, and perhaps, occasionally,
16 Alumni Althetics, over the past twenty years, the Court cannot find, based on the record before
17 it, that Plaintiffs have used the name Alumni Althetics consistently and broadly for a significant
18 period of time. Therefore, Plaintiffs have not submitted sufficient evidence to demonstrate the
19 existence of secondary meaning and, thus, that they have a protectable mark.

20  Accordingly, the Court finds that Plaintiffs have not demonstrated a clear showing that
21 they are likely to succeed on the merits of their claims and DENIES their TRO.

22  **IT IS SO ORDERED.**

24 Dated: June 11, 2010

*Jeffrey S. White*
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

4