**STAINBROOK & STAINBROOK, LLP**
NORTH BAY INTELLECTUAL PROPERTY LAW GROUP

412 Aviation Boulevard, Suite H   Santa Rosa, CA 95403   t  707.578.9333   f  707.578.3133
165 N. Redwood Drive, Suite 110  San Rafael, CA 94903   t  415.492.9333   f  415.499.3130

www.northbay-iplaw.com

# ORDER ON DISCOVERY DISPUTE

March 28, 2011

The Honorable Jeffrey S. White, U.S.D.J.
Phillip Burton Federal Building & United States Courthouse
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, California 94102

    Re:    *Cazet et al v. Epps et al,* Case No.: C 10-02460 JSW

Dear Judge White:

    Pursuant to the Local Rules and the Court's Civil Standing Orders, the parties write jointly with respect to Defendants' request for discovery relief related to Cazet's responses and objections to certain of Defendants' documents requests and interrogatories. The parties certify that they have attempted in good faith to resolve the dispute, including an "in person" conference. The relevant discovery responses, which incorporate the requests, are attached.

**<u>Defendants' Position</u>**

    With respect to defendant Hayman's document requests to plaintiff Cazett, Defendants seek relief with respect to Requests 1, 2, 14 - 20, 43, 46, and 78. With respect to defendant Epp's requests to Cazet, Defendants seek relief with respect to Request 30. As the Court will recall from the denial of Plaintiffs' motion for a TRO, this case is largely about Plaintiffs' efforts to stop Defendants' use of the name "Alumni Athletics." As the Court held, to obtain this relief, Plaintiffs must prove that their descriptive "Alumni Football" name has secondary meaning. Though preliminary, the Court's decision did identify secondary meaning as a critical issue. And because Plaintiffs do not own a relevant federal trademark application, they must prove secondary meaning on a region by region basis. *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088 (9th Cir. 2004). Defendants served requests aimed at obtaining documents relevant to these issues. Cazet's responses, however, included numerous inappropriate objections and absolute refusals to produce any documents. Even in instances where Cazet asserted that he would produce "all" responsive documents, the actual production excluded entire categories.

    Plaintiffs allege that they organized over 500 events, with an average attendance of 700 spectators, and ticket prices between $5 and $10, thus generating ticket sales of $1,750,000 to $3,500,000. Plaintiffs further allege that they obtained insurance coverage for each event and had each player sign an agreement. Defendants sought documents which would confirm or deny Plaintiffs' allegations. Though Cazet purportedly produced all documents responsive to Hayman Request 1, seeking proof of the average attendance, Cazet produced no ticket sales or revenues

**STAINBROOK & STAINBROOK, LLP**
*The Honorable Jeffrey S. White, U.S.D.J.*
*Re: Cazet et al v. Epps et al,  Case no. C 10-02460 JSW*
28 March 2011
page -2-

records, no receipts, nor any similar records.  Epps Request 30 plainly and explicitly sought all financial documents, including income statements and balance sheets.  Based on a variety of objections, Cazet refused to produce any responsive documents.  At Hayman Request 18, Defendants sought all documents concerning contracts, business relations, transactions, etc.  Save for three or four cancelled checks (of dubious relevance), Cazet produced absolutely no financial records.  Save for a smattering of documents evidencing perhaps a few events and related contracts, Cazet produced no documents from which anyone could conclude he put on 500+ events.  Though the production is clearly incomplete, Cazet objected to Hayman Requests 2, 15 - 20, 43, and 46 and Epps Requests 1 - 4, 8, and 10 as "cumulative" and refused to reply.  Though Plaintiffs have now supplemented their original production and removed many of the objections, the production still contains no audited or unaudited financial statements, no general ledger, no profit and loss statements, and no other typical documents by which a business could determine total revenue, expenses, or profitability.

Hayman Request 78 sought Cazet's tax returns for 2001 - 2009.  Initially, there is no absolute prohibition on the discovery of tax returns (*Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975)), and Defendants have offered to take returns redacted of irrelevant information such as social security numbers and unrelated income.  The returns are not only relevant, but critical to at least two issues.  The tax returns would be the most accurate representation of the size of Plaintiffs' business – the most crucial secondary meaning factor.  In the absence of other financial documents (see above), the tax returns may be the *only* evidence showing total revenues and total expenses.  Even if the returns are not the only evidence, they provide a means to verify the other information Cazet has provided through less reliable means.  And if Plaintiffs have never declared or paid taxes on the up to $3.5 Million they may have generated – Cazet made statements to this effect to defendants Epps and Ripley – then the use of the mark would have been illegal and would have created no trademark rights.  *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) ("only lawful use in commerce" can create rights).  Similarly, if Plaintiffs have never reported income or paid taxes with respect to the entirety of the business upon which their alleged trademark rights are based, this information is certainly relevant to Defendants' unclean hands defense.  Plaintiffs have never affirmatively stated that they did pay taxes on this income, but instead argue the failure to pay taxes is not the type of illegal activity relevant to the inquiry.  Admittedly, there is no known case law on this specific issue.  But Defendants respectfully suggest that a motion to compel is not the appropriate vehicle for testing the substantive law.  This legal issue will be raised in Defendants' motion for summary judgment and Defendants are entitled to discovery on the underlying facts.  Thus, Plaintiffs should be ordered to produce all requested tax returns, together will all other financial documents.  Alternatively, Defendants seek an Order preventing Plaintiffs from offering testimony that is contradictory to the complete absence of documentary evidence.  Given the importance of the issues, it is patently unfair to permit Plaintiffs to offer testimony or affidavits relating to events, revenue, attendance, etc., while simultaneously failing to produce any relevant, related documents.

**STAINBROOK & STAINBROOK, LLP**
*The Honorable Jeffrey S. White, U.S.D.J.*
*Re: Cazet et al v. Epps et al,  Case no. C 10-02460 JSW*
28 March 2011
page -2-

**Plaintiffs' Position**

  Defendants are primarily asking to compel responses that are simply not responsive to their overly broad discovery requests.  Essentially, they asked for everything under the sun, and are now complaining, not because Plaintiffs refused to comply, but because Plaintiffs didn't provide them with the documents they thought should exist, e.g., detailed financial statements for the years prior to 2009.  A motion to compel does not lie where a party broadly asks for documents, gets responsive documents, but does not get those they believe *should* exist.   Except for the issue of tax returns, which Plaintiffs are not willing to produce without reasonable restrictions, Defendants' dissatisfaction seems to be that Plaintiffs have not produced documents that don't exist.  Simply because Plaintiffs have not, and can not, produce the particular documents that Defendants desire does not mean Plaintiffs have failed to comply with discovery. Plaintiffs are also seeking Defendants' tax returns, which Defendants have refused to produce.

  With respect to Defendants' ludicrous position that Plaintiff should be precluded from testifying and offering affidavits relating to events, revenue, attendance, etc.. this is hardly an issue for a discovery dispute.   There is no basis to preclude sworn testimony simply because documentary evidence on the topic does not exist. What weight that testimony is given in light of the lack of supporting evidence is a up to the trier of fact; however, it is a party's right to offer whatever evidence he has in whatever form.  Should the Court be seriously considering this request, Plaintiffs respectfully request full briefing be ordered.

  Thus, the primary dispute seems to be reaching an agreement to produce tax returns. Plaintiffs have offered to produce their tax returns as long as their use is limited to the income from and expenses of the business, i.e., issues relating to the claims in the lawsuit.  However, Defendants have made it clear that they intend to use the returns to argue two flawed affirmative defenses that are unsupported by law:  One based on "unclean hands" and the other on "unlawful use."  Even assuming Mr. Cazet failed to pay sufficient taxes, as Defendants seem to believe, that fact would not support either defense.  "'It is fundamental to [the] operation of [Unclean Hands] that the alleged misconduct by the [party] relate **directly to the transaction concerning which the complaint is made**.'  '[U]nclean hands does not constitute 'misconduct in the abstract, unrelated to the claim to which it is asserted as a defense.'" *Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc.*  621 F.3d 981, 986 -987 (9th Cir. 2010)[emphasis added].   Plaintiffs' payment of taxes does not relate to the trademark claims in this lawsuit.

  Defendants failed to plead, and therefore waived this defense of "unlawful use." *Dessert Beauty, Inc. v. Fox*  617 F.Supp.2d 185, 190 (S.D.N.Y.,2007).  Even had it not been waived, it would still be inapplicable. **"**Unlawful use will be found where: (1) the issue of compliance has previously been determined (with a finding of non-compliance) by a court or government agency having competent jurisdiction …or (2) where there has been a per se violation of a statute **regulating the sale of a party's goods**. ... [T]he non-compliance [must have been] material, ...

**STAINBROOK & STAINBROOK, LLP**
*The Honorable Jeffrey S. White, U.S.D.J.*
*Re: Cazet et al v. Epps et al, Case no. C 10-02460 JSW*
28 March 2011
page -2-

of such gravity and significance that the usage must be considered unlawful." *Id.* The cases cited by Defendants relate to the second situation. *Cre Agri* related to non compliance with *labeling standards*, and in *GoClear, LLC v. Target Corp.* 2009 WL 160624 N.D.Cal.,2009 (another case repeatedly cited by defendants) the *very act* of introducing the product into commerce was illegal, since it was a drug not approved by the FDA. As these cases make clear the "use in commerce" must *itself* be unlawful. Defendants admit that there is no authority for their proposition that non-payment of taxes by a mark-holder makes his use in commerce unlawful. Their attempt to frame a frivolous argument as a novel one should not be well taken. Allowing the tax returns to be used for these frivolous arguments would only muddy the litigation and cause both sides to incur significant costs fighting over issues that are entirely irrelevant to the claims and defenses of this lawsuit.

Plaintiffs understand that the privilege attached to tax returns is not absolute, On the other hand, it is not non-existent either. When tax returns are required to be produced, the typical protective order usually limits their use to relevant issues in the lawsuit. Plaintiffs respectfully request that the Court rule these "defenses" inapplicable, limit the use of the tax returns as requested, and order both sides to produce returns, or allow full briefing of a Motion for Protective Order.

Very truly yours,

**STAINBROOK & STAINBROOK, LLP**

/s/ Craig M. Stainbrook

Craig M. Stainbrook

**SINGLER NAPELL & DILLON, LLP**

/s/ Bryan W. Dillon

Bryan W. Dillon

**ORDER**

Plaintiff is hereby ordered to produce documents responsive to Defendant Hayman's Requests 1, 2, 14-20, 43, and 46 and Defendant Cazet's Request 30. In response to requests for which no documents exist, Plaintiff shall so certify in a sworn declaration. With respect to Hayman's Request 78 and Plaintiff's request for Defendants' tax returns, the parties shall produce responsive documents for the limited purpose of determining business income and expenses and evidence of the size of Plaintiff's business. Defendant has not demonstrated that evidence of Plaintiff's failure to pay taxes is reasonably calculated to lead to the discovery of admissible evidence. **IT IS SO ORDERED.**

Dated: March 31, 2011

*IT IS SO ORDERED*
*Judge Jeffrey S. White*